'N266

## STATE OF ALABAMA

### Department of Corrections
*Inmate Stationery*

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
( SOUTHERN DIVISION )

WILLIAM AARON ROLLINS                  ✷

    Plaintiff                                        ✷

v.                                                      ✷   CIVIL ACTION NO: 1:08-CV-33-MHT

COMMANDER REED, et al                  ✷

    Defendant                                    ✷

                                  ✷

RESPONSIVE MOTION IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGEMENT

    COMES NOW the Plaintiff, William Aaron Rollins in the above-styled cause respectfully requests the Honorable District Court for the Middle District of Alabama (Southern Division), pursuant to governing rules of the Alabama Rules of Civil Procedure and by process of the District Court's inherent judicial authority directly address Plaintiff's category of issues and grant appropiate relief in reference to the presented Responsive Motion In Opposition to Defendants' Motion for Summary Judgement. A.R.Civ.P Rule 56(c)(1).

    Plaintiff states the following grounds for the requested motion:

        1. Substantive due process rights guard against the government's exercise of power without any reasonable justification in the service of a legitimate governmental objective.

        2. State or county official satisfies the personal responsibility liability required to be individually liable under § 1983... if she or he acts (or fails to act) with deliberate or reckless disregard of Plaintiff's constitutional rights or

# STATE OF ALABAMA

### Department of Corrections
*Inmate Stationery*

the conduct causing the deprivation occurs at the discretion or with their knowledge or consent. U.S.C.A. 42 Amend.

   3. Plaintiff contends that the complaint is not being presented for any improper purpose such as to harass or to cause unnecessary delay or needless increase in the costs of litigation as prohibited by A.R.Civ. P. Rule 11(b) 1.

   4. Plaintiff contends as the non-moving party in the stated cause that the allegations and other factual contentions have evidentiary support and if specifically so identified, the Plaintiff's representations to the Court are likely to have evidentiary support after reasonable opportunity for further investigation or discovery. A.R.Civ.P. Rule 11(b) 3.

   5. Defendants' request to treat and convert the recently served (May 8, 2008) Special Report and Answer as a Motion for Summary Judgement infringes upon the Court's discretionary intrest in regards to the issuance of a sched-ueling order and the terms of the order by rule should be applicable to set forth a timetable of deadlines for each of the litigants to follow.

   6. Due process prohibits a state from punishing a pre-trial detainee at all until he is lawfully convicted of a crime. Bell v. Wolfish 441 US. 520, 535 99 S.Ct. 1861, 1872 60 L. Ed. 2d. 447 (1974) 14th U.S.C.A.

   7. Plaintiff asserts that it is a requirement for the Court to acknowledge that while the Defendants' have moved for Summary Judgement based on doctrine of qualified immunity, the Court must view the facts in light most favorable to the Plaintiff. Stewart v. Baldwin Co. Bd. of Education 908 F.2d 1499, 1503 11th Cr. 1990

   8. Plaintiff's 1983 complaint is properly founded upon clearly established law in that it addresses unconstitutional state and county administrative disciplinary hearing practices

2

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

and procedures. 8th Amend U.S.C.A. , 14th Amend. U.S.C.A., 42 Amend. U.S.C.A.

  9. Plaintiffs claim of respondent superior theory does apply because of a showing in the evidence of the policy being misapplied. Sheriff Andy Hughes... thereby having superior authority over his supervisory officials whom are the named Defendants'., Commander K. Reed, Sergant Carl Kirksey and Sergant Cindy Buchmann supports a finding for liability under the respondent superior basis and... 1. A supervisor may be liable under section 1983 if he or she participates directly in the acts constituting a constitutional violation or, 2. the challenged actions are casually connected to a constitutional violation. HC v. Jarrad 786 F.2d Ala. Code § 14-6-1 (1995).

  10. Defendant Commander Keith Reed's comment of "record of past incidents" exhibits conclusionary and speculative inferences which have no bearing on Plaintiff's claims. Therefore, Plaintiff asks the District Court to throughly analyze the sufficiency of the evidence aspect in regards to key preliminary issues of whether the Plaintiffs conduct or apparent standard of conduct had actually reached the point where there would be clear and convincing evidence that "overall disruptive behavior" would esculate (by the other inmates) and what is strongly corrolative of these "presumed allegations". By rule of law and fact., "Speculation and subjective beliefs are not the equivalent of personal knowledge and do not satisfy the requirement set by A.R.Civ.P. 56(e)*

* (Footnote: refers to statement in Exhibit #3, pg. 3 paragraph 2 Comm. Reed)

N266

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

11. Dismissal or Summary Judgement in favor of the Defendants' would be inappropiate under 28 U.S.C. § 1915(d) "in forma pauperis" because none of the facts alleged by the Plaintiff rise to the level of "irrational" or the "wholly incredible" and there are judicially noticable facts available to contradict the facts alleged by the Defendants'. Hernandez v. Deston 504 U.S. 25, 118 L. Ed. 2d. 340, 112 S.Ct. 1715.

12. A 1915(d) frivilousness determination cannot serve as a fact finding process for the resolution of disputed facts.

13. Plaintiff's complaint contends that he was substantially denied due process of (substantive and procedural) law by the Defendants' implementing and using and evidentiary standard that was significantly below the preponderance of the evidence standard as required for initial disciplinary hearings and for establishing factual determinations.

14. Plaintiff is prepared to present relative evidence that indicates that on prior occassions before the incident in question, Plaintiff had been intentionally misinformed as to the appropiate appeal and grievance process, including all other available alternatives which would reserve Plaintiff's inmate appeal and grievance rights *

15. Plaintiff's 1983 complaint submits material issues of fact in reference to how the recorded evidence demonstrates the existence of a "joint action", "a concerted effort" and a general understanding between the principal Defendants' involved. This fact in evidence makes it apparently clear that the Plaintiffs is entitled to Injunctive relief., where county jail prisoners are deprived of their constitutional rights by state

* Refer to Exhibit # 4

4

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

officials acting under color of state law, in the event the injury to the Plaintiff was caused by the operation of a "policy or custom." Art. I. Section 14 Ala. Const., 42 U.S.C.A. § 1986(3)

16. Plaintiff can make the necessary showing as stipulated under 18 U.S.C.S. § 3626 that complaint mandates the entitlement to the Plaintiff for prospective relief in the form of punitive damages. Sapp v. Unlimited Concepts Inc. 208 F.3d. 928, 934 11th Cr. 2000.

17. Defendants' Motion for Summary Judgement is inappropriate in that there are genuine issues of material facts that doesn't entitle the Defendants' to a favorable judgement as a matter of law. A.R.Civ.P. Rule 12(b)(6) 28 U.S.C.A.

18. Inadequate Response to Sanction Appeal: Appeal from inmate sanction/restriction (dated October 12 2007) when returned did not meet the "Wolf written statement doctrine" on the grounds that: (A) The statement of Sgt. K. Turner concerning the findings and evidence relied on was "sparse", nor did the statement compact with minimal requirements of due process" (B) Statement did not fully explain the evidence relied upon and the reasons for the disciplinary action. Wolf v. McDonnell 418 U.S. § 539, 94 S. Ct. 2963 41 L.Ed. 2d. 935 (1974) ... * refers to Exhibit # and to inserted copy within Defendants' Special Report and Answer. A.R.Civ.P. Rule 10(c).

19. Plaintiff asserts that the amended complaint and Responsive Motion in Opposition to Defendants' Motion for Summary Judgement conforms to Rule 8(a) of the Federal Rules of Civil Procedure and the complaint satisfies the threshold requirement of Art. III of the Constitution bearing upon those who seek to invoke the power of Federal Courts must allege an actual case or controversy.

5

**STATE OF ALABAMA**

Department of Corrections

*Inmate Stationery*

20. Plaintiff's complaint does not fall within the prohibition of § Article I Section 14 of the Constitution because it is in the recognized category of, 1. "Actions brought to compel State officials to perform their legal duties. Dept. of Industrial Relations v. West Boylston Manufacturing Co., 283 Ala. 67 42 So. 2d. 787.

21. Manipulative denial of any due process liberty intrest of Plaintiff including the "freedom from arbitriary restraint is "highly qualified", and must be balanced against the State's reason for restraining that liberty and cannot amount to cruel and unusal punishment of Plaintiff under the Due Process Clause. 5th Amend U.S.C.A, 8th Amend U.S.C.A., 14th Amend. U.S.C.A.

22. The denial of visitation priviledges for the Plaintiff is constitutionally prohibited by the Due Process Clause of the 14th Amendment. Plaintiff presents as factual evidence that he was subjected to a combination of: 1. Segregated lockdown and, 2. consecutive losses of visitation priviledges, which were both imposed by directives within the same sanction and thereby arbitrarily imposing seperate intervals of punishment *

23. The Due Process Clause of the 14th Amendment prohibits the government from interfering in "familial relationships" unless the government adheres to the requirements of procedural and substantive due process. U.S.C.A. § 14.

24. Pursuant to A.R.Civ.P 56(d), Plaintiff for good cause shown requests this Court to recognize this ground as a Motion to Object and Strike Defenses of Defendants' Special Report

*(Footnote: refers to dates of restrictions on copy of "Inmate Restriction Sanction (October 11, 2007) contained in the Defendants compilation of documentation.

6

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

and Answer, in particular numbers 15-17 of the Affirmative and Additional Defenses. Furthermore, Plaintiff also requests the District Court to reject all prior assertions of immunity defenses so titled due to:

A. The dispute cannot be resolved on the basis of the statements and record presented in the Special Report and Answer.

B. The Plaintiff's perceived need for further discovery in relation to the circumstances of the case. This pleading includes striking of all Defendants' pleadings regarding: 1. qualified immunities, 2. substantive immunities, 3. state law immunities, 4. absolute immunities, 5. sovereign immunities, 6. defenses and good faith immunities given to officers of law and government entities. A.R.Civ.P. 12(c)

25. Plaintiff states opposition to Defendants' third affirmative defense claim included in the Special Report and Answer based on Plaintiff's transfer from the Houston County Jail Facility when orders were still pending from the District Court Magistrate in reference to the underlying complaint. Plaintiff contends that he is a member of a protected class of individuals. Therefore, the named Plaintiff eventhough being transfered into the ADOC (Alabama Dept. of Corrections) on Febuary 6, 2008 at the time this matter was being petitioned for review by the District Court, the matter itself cannot be considered "moot" in that respect. Plaintiff can substantiate this as good cause due to Plaintiff has met the prerequisites of Article III of the Federal Constitution stressing that ... 1. "all named Plaintiffs have a case or controversy between the Defendants'" and 2. "because of the temporary nature of segregated confinement at the Houston County Jail ... the issues presented are capable of repetition by the Defendants'." A.R.Civ.P. 23(d).

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

26. Plaintiff's complaint is the type of case that can be recognized as being related to the Equal Protection Clause of the Federal Constitution that is promulgated as relevant to claims brought by a "class of one" where the Plaintiff alleges that he has been intentionally treated differently from others similarly situated and there was "no rational basis" for the difference in treatment. (Exposure to pretrual administrative confinement in segregation). 14th Amend. U.S.C.A.

27. Plaintiff directs the Court to Rule 28 USC. 1343 stating in part: "the District Court(s) shall have original jurisdiction of any civil action authorized by law to be commenced by any person … section(3) "to redress the deprivation under color of State law statue, ordinance, regulation, custom or usage of any right priviledge or immunity secured by the Constitution of the United States or by any act of Congress providing for equal rights of citizens or of all persons within jurisdiction of the United States.

28. The Plaintiff's 1983 cause has equal priviledge to be formally addressed by the District Court due to statutory precedent from Ala Code 41-9-62 which pertains to quote: "the authority of the Board of Adjustments is to act for the Legislature on facts found by the Board within defined limits when no court has jurisdiction. When the State agencies has so acted as to create a moral obligation which should be discharged as a public duty. Thus, the Board does not sit as a court and does not legislate."

29. Plaintiff admitts to the Court that portions of his motion does speak in general terms without specifying names, however the complaint does concern patterns of him being arbitrably subjected to administrative segregation. This forms geninue issues that the District Court can apply both the objective component and the subjective component standard of review that calls for a fact intensive analysis. Wilson v. Suiter 501 U.S. 294, 298 111 S.Ct. 2321, 2324 115 L. Ed 2d. 1991.

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

---

30. Plaintiff contends that the Court should not allow a substantial amount of latitude and weight toward the allegations contained within the Defendants' Special Report and Answer. Plaintiff's points of fact that supports his argument is based on the "original actions" and "non actions" of the named Defendants' (including the correctional officers that were also personally involved) completely undermined the procedural protections that due process was meant to provide. Plaintiff's retalitory ("improper intent") argument in opposition to the Defendants' Motion for Summary Judgement focuses and is offered in support of the Plaintiff's 14th Amendment pre-trial punishment claim to show a considerable degree of proof of an illegitimate animus through direct and circumstantial evidence explaining what manipulative manner of process was contemplated by the Defendants'.

31. Plaintiff asserts that Defendants' did not indicate in the Special Report and Answer what "compelling penalogical intrest" reasonably justified the consequential acts of:

1. Immediately escorting the Plaintiff to administrative segregation at the time.

2. Delaying the grievance procedure reviewal process

3. Omitting from the Defendants' report several properly submitted and filed inmate grievance and request forms that related to the imposed sanction.

4. Selectively and negligently misquoting the given set of facts that actually prompted the incident, escalating the presumption that the Defendants' acting in their official capacities as agents of the State deliberatly sought to deprive the Plaintiff of equal protection of the laws. Plaintiff can show that all these mentioned allegations as true.

32. Plaintiff is comptent to testify to the District Court under oath about what portions bearing on the entire investigation process of the incident was intentionally distorted and deleted

9.

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

from being available through directed facts and through the proper channels of documentation. Plaintiff purposes that these evaluative facts are simultaneously related and are extremely essential to "the "knowledge and intent" aspects in regards to the subject matter of the complaint.

33. Plaintiff requests the Court to allow the designated facts referred to in points 29-32 be taken as established for the Court's benefit of reviewal of the sequence of events that led to the Plaintiff's particular grievance that was exclusively submitted to Sheriff Andy Hughes office on October 26, 2007. According to the comments taken from Commander Keith Reed's narrative on page 2, paragraph 1 of the Affidavit in the Defendant's Special Report and Answer, Comm. Reed was directly given ("pursuant to Sheriff's standing order") the grievance submitted regarding the prior incident. From an objective interpretation of the language, the narrative states fact that he was directly given the grievance in order to make an official inquiry into the Plaintiff's grievance concerning the subject matter incident* From reviewal of the record as it stands., the grievance submitted regarding the prior incident was evidently delayed for over 14 days before being returned with a response* this response being signatured by Commander Reed. Also, since this point in evidence is clearly established from the record, the record can distinctly identify that the return of the response was well after the time frame of the Plaintiff* being released from administrative segregation. Consequently, this was only achieved by the apparent finalization of Plaintiff's segregated lockdown portion of the imposed punishment.

*(Defendant Comm. Reed states claim that the grievance "primary issue" was unable to be addressed due to his conclusion that it contained

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

several issues).

(*. Date response delivered to Plaintiff is shown as being later than November 8, 2007).

34. Plaintiff asserts that by the Defendants' not committing the previously stated facts (29-34) to discovery standards which was duly ordered by the Court to perform... the Defendants distinctly violated A.R.Civ.P. 11(c) by failure to satisfy their constitutional obligation to turn over exculpatory and impeachment evidence to the Court. Brady v. Maryland, 373 U.S. 83. S.Ct. 1194 10 L. Ed. 2d 215 (1963) A.R.Civ.P. 37(b).

35. Plaintiff asserts that the District Court may consider newly discovered evidence with a valid showing by the ~~soliceter~~ party of the circumstances that prevented his presenting that evidence to counter that offered in support of the Defendants' Motion for Summary Judgement.

36 Plaintiff puts primary emphasis upon the requested claims for relief from the Court in awarding of attorney fees under 42 USC. § 1988 if appropriately prevails on any of the Federal Constitutional claims brought under 42 USC § 1983

37. Plaintiff asserts that his complaint has specific constitutional issues that are binding and the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claim that would demonstrate an entitlement to relief. Fed. Rules of Civ. Proc. Rule 12(b)(6)  28 USCA

## STATE OF ALABAMA

Department of Corrections
*Inmate Stationery*

---

## "PLAINTIFF'S REQUEST FOR DISTRICT COURT RECOMMENDATIONS"

36. Plaintiff in good faith requests prior recommendations by this Court before seeking to grant permission to file any pleadings or motion for leave to compel Defendants' for Admissions or a Request for Admissions pursuant to ARCiv.P. Rule 36(a)..., in order that all defenses and claimed allegations be designated, embraced and directly taken as established for the purpose of preservation of the triable issues connected with the pending action and for further discovery that will be material to a proper determination of the relevant claims.

---

## PLAINTIFF'S ACCESSIBILITY LIMITATIONS PERTAINING TO COMPLIANCE ORDER

In reference to the District Court's order requiring Plaintiff to specifically address Defendants argument that he (Plaintiff) has failed to exhaust available administrative remedies as required by 42 USC § 1997e(a) of the Prison Litigation Reform Act, Plaintiff respectfully asks for good cause shown - that primarily due to conditions pertaining to his current incarcerated status at Ventress Correctional Facility, his privilege of access to the Court's (the law library) and to other substantial references and legal correspondence is very limited due to incidental over-crowded conditions within the institution, making it difficult

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

for the Plaintiff to devote the necessary time to effectively research and identify the particular concepts of the applicable terms and case citings notes presented by the District Court and the related points of law from the Defendant's Special Report and Answer.

Plaintiff contends that he has attempted to define the case citings and the points of authorities dealing with the Prison Litigation Reform Act amendment to 42 USC. §1997 e(a). Although the Court has advised the Plaintiff of the potential consequences and the purposes of the case citings as they apply to the law, the Plaintiff asks the District Court to give specific consideration to:

1. Being pronounced a "pro se" litigant without representing counsel.
2. In dengency status
3. Plaintiff's specific need to consult some more accurate source material about the exact changes made by the amendment to the 42 U.S.C. §1997e(a) statue.

Plaintiff is further acknowledging that he is aware of A.R.Civ.P Rule 10 requirement that all discrete claims and pleadings should be plead in seperate counts. Plaintiff only has access to the unrevised version of the "Alabama Rules of Civil Procedure" and can only quote the statutory language provided as reasonably interpated. Plaintiff has used due diligence to inform the District Court along with the named Defendants' of all the genuine issues which specifically pertain to this dispute. Plaintiff assures, that he will put forth maximum effort to clearly address each issue so ordered by clarifing statements within his "Sworn Affidavit" that will act as evidentiary rebutal arguments of all assertions contained in the Defendant's affidavits and the Special Report and Answer.

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

## CERTIFICATE OF SERVICE

I, William Aaron Rollins #161962 hereby certify that I have served a copy of the foregoing Motion in Opposition to Summary Judgement upon the Defendants' attorney for the referenced matter Gary C. Sherrer 335 West Main Street, Dothan, Alabama 36301, by placing a copy of the same in the U.S. Mail postage paid and properly addressed on this 8th day of July, 2008.

William A. Rollins "Pro Se"

Wilam A. Rollins #161962 C1-61A
C/O Ventress Correctional Facility
P.O. Box 767
Clayton, AL. 36016

NAME William Rollins  AIS # 161962  DORM # C1-61A
**VENTRESS CORRECTIONAL FACILITY**
**P. O. BOX 767**
**Clayton, AL 36016**

"Legal Mail"
"Priority"

**"This correspondence is forwarded from**
**an Alabama State Prison. The contents have**
**not been evaluated, and the Alabama Department**
**of Corrections is not responsible for the substance**
**or content of the enclosed communication."**

urgent correspondence



$00.76⁰

MAILED FROM ZIP CODE 36016

Office of the Clerk
United States District Court
P.O. Box 711
Montgomery, Alabama 36101-0711

EXHIBIT #2

## INMATE REQUEST FORM

INMATES # 235564 B9

C/O SIGNATURE

SR C/O SIGNATURE

Willie Rollins

NATURE OF REQUEST

ACTION TAKEN

USBPI Reorder#12055 (8/06)

oath of secrecy that took precedence over obligation

without the proper evidence it would be impossible to arrive at a definitive conclusion on this point.

"From which anything can be construed"

Circumstances that were clearly odd & unusal

*reciprocal discovery order,

Propensity for violence

Start (top your pgs 34, 32, 31 (specifically)

When did the State completly conspile all of the evidence (including the evidence it intends to use for trial) that is involves this case. & when did they State provide access to defendant.

The court did not allow or advise a motion could be filed to appeal the finding of the indictment on April 10, nor to appeal the denial of a request for counsel" April 16 (submitted April 12)

# INMATE GRIEVANCE FORM

DATE: 5-14-07 _____ 2005    POD/CELL LOCATION: J-Pod

INMATE NAME: William Rollins    INMATE NUMBER: 35564

NATURE OF GRIEVANCE OR INFORMATION: I was written up and given 3 consecutive sanctions for a incident that I was told I had no choice but to allow." I am formally writing this grievance to you because on my appeal the officer who reviewed stated no reason to disapprove the appeal that relates to the incident that I am involved in. (Saying that an appeal was not filed out correctly or for a complete explanation within the appeal is provided is an acceptable response by law. (Constitutional law)

WHAT DO YOU WANT TO HAPPEN TO SOLVE IT? I want to have all my procedural options within the right to have these presented to the District Courts be promptly administered starting with this grievance being presented to the jail administrator and/or the commander. Please send me an Affidavit for Hardship with all the information concerning what is funds or assets are in my commissary fund (transcript) (# copy of this to be forwarded to commander) Keri

OFFICER RESPONSE OR FINDING? _____

SGT. ON DUTY RESPONSE: 5/15/07   This is not filled out (on the right form). You have already Appealed your sanctions. (There is no more to say or do.) They were all 3 seperate incidents. And for the records they were not filled out properly.

EXHIBIT #4

* * * * * * * * * * * * *  DO NOT SIGN UNTIL YOU HAVE READ RESPONSE  * * * * * * * * * * * * * *

DATE GRIEVANCE RETURNED: _____

CORRECTIONS OFFICER SIGNATURE: _____

INMATE SIGNATURE: _____

N266

## STATE OF ALABAMA
### Department of Corrections
### *Inmate Stationery*

RECEIVED

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

| | |
|---|---|
| WILLIAM AARON ROLLINS | ✱ |
|     Plaintiff | ✱ |
| v. | ✱ CIVIL ACTION: 1:08-CV-33-MHT |
| COMMANDER REED, et al | ✱ |
|     Defendant | ✱ |
| | ✱ |

## AFFIDAVIT

### Introduction

Plaintiff in good faith by the order of the District Court in the intrest for the proper administering of a fair and equal judicial process governed under the laws of the Constitution of the United States and the State of Alabama, herby submitts to the Court his duly sworn "Affidavit" of all geniune issues of factual personal Knowledge and facts ..., some of which do not appear on the face of the record but are of substantial merit and should be considered by the jurisidictional invested power of the Honorable District Court.

Plaintiff's averments will significantlly enable Plaintiff to challenge the named Defendants' purposed defenses and allegations contained within their prior affidavits and the Special Report and Answer, and will fulfill the District Court's requirements upon relevant evidence in order to support the Plaintiff's constitutionally mandated claims that are addressed in the subject matter complaint.

AR Civ. P. 56(e)

## STATE OF ALABAMA

### Department of Corrections
#### Inmate Stationery

Before me the undersigned authority for administering oaths personally appeared the Plaintiff, William Aaron Rollins an inmate currently incarcerated at Ventress Correctional Facility, Clayton, Alabama, who being by me first duly sworn desposes and says as follows:

I am William Rollins AIS# 161962. I am 45 years of age. The statements contained within this affidavit concerns direct factual illustrations depicting relevant events which led to the incident which occurred on the date of October 11, 2007 which is when I faced arbitrary circumstances due to being subjected to unconsented and involuntary administrative segregation lockdown in the disciplinary confinement area in the Houston County Jail.

**Narrative I**    The first point that I would like to present in my sworn affidavit about the referenced matter focuses on the details regarding the manner in which the Houston County Sheriff's Department (two) inmate rule violations was initially imposed upon me pursuant to orders by the named Defendant officers .. Sergeant Cindy Buchmann and Sergeant Carl Kirksey.

Before I was confined to lockdown cell B-9, I originally made personal contact with correction officer Moon in the dayroom of the H-Pod detainment area. This contact with CO Moon was somewhere within the time frame of 7:44 p.m. to 8:15 p.m. At approximately that time, all the inmate population within the pod areas A through H were individually "rolled out of their assigned cells which complied with the jail operation policy involving rollin/ roll out time schedules*, that are posted in all the pods by the staff

## STATE OF ALABAMA
### Department of Corrections
### *Inmate Stationery*

**#1** In reference to **Exhibit A** of the **Defendants'** Special Report and Answer, the jail handbook of record doesn't provide the revised policies that were enacted during Andy Hughes appointment as Sheriff. The handbook policy was retailored under Commander Reed's administration through memorandum notices that wasn't included in the Defendants' report as an adopted referenced exhibit. A.R.Civ.P. 10(c).

When Officer Moon originally made contact with me, I was directly within proper checkpoint view, which was on the immediate right-hand side of the entrance way to H-Pod. From this position there are constructed security windows that from a general impression was designed to allow the staff officers to identify inmate detainees and any existing discrepancy, safety and health hazards that may arise or prohibited behavior by the inmates stationed within the particular pod area. The exact position where I was stationed at the time CO Moon entered and made contact with me (and others) was directly inside the H-Pod dayroom area, laying on my county jail issued mattress on the dayroom floor which was where all my personal items were also. My exact position was in the corner directly in the corner ... directly underneath the framework of the security windows at the front of H-Pod, near the entrance to the pod.

At about 7:00 p.m. (before the pod duty officers involved escorted me to segregation lockdown) the inmates were advised that church services were beginning to start in the Houston County Jail Community Room. To the best of my knowledge of the Chaplin services policy, services are held on a pre-designated day and time of the week, for inmates assigned to certain pod detainment areas. **#2**

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

*__2__ refer to **Exhibit A** pg. 9   of the unrevised Houston County Jail Inmate Handbook.

A majority of the inmates whom had gone to church services on that date cells were either unoccupied while attending the services or were locked for security purposes that would permit the inmates to keep their personal items within the assigned cells from being tampered with or stolen. *__3__

When I first noticed Officer Moon entering the pod, he appeared to be making a routine inspection of the dayroom area because he never fully entered into the H-Pod area far enough to make a documented physical sighting cell compliance and status inspection. When CO Moon was within the Pod-H area, I had been on my jail facility issued mattress the entire duration of "roll in time" which was from 2:00 p.m until 5:00 p.m. In fact, during the first 2½ to 3 hour period of the 2nd shift relieving the 1st shift from duty the only time I left there was during the evening meal which is usually served after the inmates are permitted to roll out of their assigned cells... thus being in compliance with the 5:00 p.m. roll out time schedule. I do not recall which correction officers originally made the count at shift change and the cell block status check of H-Pod on that particular date, but the routine (ever since I was committed to the jail's custody) that I am familiar with is that during each shift change most correctional officers commonly do not rely upon individual cell-by-cell "oral roll calls" to verify who is assigned to a particular cell or what inmates are

*__3__.. CO Moon directly secured the cell in question while awaiting for the inmates to return from church services.

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

presently committed to the dayroom floor unless a senior officer has authorized the procedure for a distinct purpose or to ensure an accurate count has been conducted. In any case, this was the particular procedure from which I was put on notice by CO Moon about the discrepancy in the cell assignment. Incidently, this discovery by CO Moon was not conducted through an actual security inspection but rather CO Moon was in the process of assigning a vacant bed space and he was issuing out returned inmate request forms at the time.

Narrative 2.

Intially, when I was confronted by CO Moon, CO Chancey was not present and had not personally heard any of the previous statements made by CO Moon and myself because he was stationed inside the A-H Pod area central control booth along with another officer (CO Baker) at the time. The moment that CO Moon asked me the reason why I was on the floor and not in cell H-6, I told him the exact circumstances that occurred which was Officer Morris and Officer Bush had told me to move from I-Pod on the date of September 12, 2007 to H-Pod per orders of Sergeant K. Turner. I then tried to fully explain that at that time ..., I had previously seen the officer that may have been responsible for the particular task to assign the cell [H-6] in question, but that I didn't know the officer by name. #4 The only thing that I could confirm, having knowledge of was the fact that I had been moved out of cell I-6 by CO Morris and CO Bush whom were assigned on that date to the first shift and they never gave any indication whatsoever that I had been given another cell assignment. All I was told by these officers was that there was a discrepancy in one of the

**STATE OF ALABAMA**

Department of Corrections
*Inmate Stationery*

other pod areas and for me to pack my belongings so that I could be transferred to A-H.

**#4** - Plaintiff contends that the reason he wasn't familiar with Officer Chapman by name was because CO Chapman was a new officer whom was in-training while the Plaintiff was confined to segregated lockdown in J-Pod which by design was a more isolated detainment area.

All of these events which involved correction officers Morris, Bush and Chapman occurred on the dates between September 12, 2007 and September 13, 2007 and was in actuality the circumstances which prompted the subject matter dispute.

After a further lengthy discussion with CO Moon about my contentions as being clearly shown as being confined in the H-Pod dayroom area, I asked him to explain why wasn't I previously told by any other duty officers about the cell assignment. As the Plaintiff, I contend that this presents a issue of fact and law which has merit and there is a legitimate dispute here because, I was asking the officer... a question of penological intrest. Also this I felt was a significant issue because:

1. A correctional officer has a duty to exercise due diligence through a reasonable routine for communicating peno-logical directives or information.

2. According to the inmates rule policy, there's clear and unambigious details that specifically inform in-custody detainees that it is required for an authorized official in the performance of his or her regular duties to supply prior notice beforehand of any mandatory

# STATE OF ALABAMA

### Department of Corrections
### *Inmate Stationery*

inmate compliance procedure that would materially effect the safety and order of the jail.

CO Moon refused to directly respond to my question about why I wasn't previously given any prior notice by other staff at the time, and it may be that the jail's records are silent as to this issue, but it is an undisputable fact, that from September 12, 2007 to October 11, 2007..., none of the evidence or allegations convincingly supports the Defendants' prior claims that I violated Rule # 12..., "No inmate will leave his authorized area. Inmates must roll into their cells when told to do so"...because it is clearly being shown that there wasn't any officer whom can be identified as properly monitoring the initial issuance of cell H-6. Especially when I was previously visually seen and approached by not only the inmate population within H-Pod, but also by other correctional staff and senior correctional officers while I was in the H-Pod dayroom **( ** refer to pg. 8).

Plaintiff submitts this point primarily to emphasize that the Defendants' while acting under the color of state law never framed an "obvious proof standard" that was validly adopted and relied upon in reference to the Rule # 12, rule infraction of an inmate's leaving of the assigned cell and the Rule # 11 infraction of an inmate disobeying direct orders given by Sheriff's Dept personnel. The named Defendants' failed to prove and never relinquished any prior personal knowledge or substantial basis corroborating the assertions made by correction officers Moon and Chancey about the "entire" circumstances considered in regards to the violation

**STATE OF ALABAMA**

Department of Corrections

*Inmate Stationery*

before endorsing the arbitrary course of action. This has everything to do with the exact subject matter of the Plaintiff's § 1983 complaint based upon the claims of manipulative denial of Plaintiff's procedural and substantive due process.

Narrative cont.

During our conversation inside the pod entrance I once again requested for CO Moon to confer with his other co-workers specifically Sgt. Turner to confirm the date that I had been moved from I-Pod and if she had any prior knowledge of me being reissued another cell assignment. At this point I assumed that he did confer with the Sergeant about the situation, but if he did so it wasn't in my presence. But I did specifically request to have direct feedback relayed to me that came from the senior officer as soon as CO Moon had received a reply and to personally speak with the Sergeant or senior officer.

** refers to submitted copies of the filed inmate request slips from H-Pod in the Defendants' Special Report and Answer discovery compilation.

From this point the way this matter was evolving became highly suspicious and unfortunately, it wasn't until I received the affidavit reports included in the Defendant's discovery that it was verifiable that CO Moon never complied with my requests nor was prior inquiry made or given by the named Defendant Sergeants, Kirksey and Buchmann beforehand. *1

## STATE OF ALABAMA

### Department of Corrections
### *Inmate Stationery*

As I was complying with CO Moon's "direct orders to move into the cell" I again confronted him in order to make my point of the dillema that there were two inmates already in the cell being referred to and that I wasn't authorized to move in the cell until he informs the inmate who had access to the bottom bunk to remove his property so that I would be able to properly store my property in accordance to the standard specified by institutional **Rule #10**.. Inmates must maintain their cells and common areas in a clean, sanitary, and orderly condition.. and **Section H** which refers to "Cell Assignments and Institutional Living (#2) which clearly states: "personal items must be stored in the drawer underneath the mattress. "Inmates must not alter, destroy any lights, walls, fixtures, or plumbing located in a cell. Inmates assigned to the cells without a drawer may place their items neatly at the front of the bunk."

CO Moon and Chancey were standing within the front entrance of H-Pod and personally instructed the two inmates who occupied cell H-6 to step outside the pod. I do not know what was stated by the officers or by the inmates at that particular time, but I assumed the meeting was to verify that they were housed in cell H-6. The reason I didn't hear the conversation was because I was sitting on the stairwell step at the time with all my personal items (except the mattress) awaiting for the return of the inmates so that Officer Moon and/or Chancey would confirm that I was cleared to move into

**#1** refer to Sgt. C. Kirksey's affidavit pg. 2.
**#2** Inmate Rule Handbook in Defendants' Report **Exhibit A** pg. 4

# STATE OF ALABAMA

### Department of Corrections
### Inmate Stationery

the cell. However, one of the mentioned inmates remained outside with CO's Moon and Chancey *3 When the mentioned inmates went outsided the pod I reasoned that I could be given the opportunity to be directly involved in the conversations which I had no reason to believe were confidential. My whole perception was to be allowed to move my belongings unhindered into H-6 and to be assured the available bunk and cell was correctly assigned to whomever was listed on the classification log. Contrary to my reasonable efforts to cooperate, CO Moon persisted in not giving me the opportunity to address the situation before a supervisory officer while all the concerned inmate parties were present and accounted for.

Consequently, even if this was done within the realms of state agency regulations which allows an officer general discretion to conduct only a reasonably necessary amount of analysis, the manner in which the investigation was conducted by the named Defendants' didn't reach an appropiate level of due process, the rule violations were based upon false allegations and no rational basis ever existed for disciplinary action before nor after Sergeant Kicksey made his individualized determination. In fact, beyond Sergeant Kirksey's dependence on the mere hindsights of the officer personnel..., there is no tangible evidence documented within my personal inmate file, that can portray my actions as being "extremely volatile" or went so far above valid penological intrest; that it would have been impossible for the authorized personnel to satisfy the reasonable relationship

*3 Plaintiff recommends that he be allowed to file a verified petion under F.R.Civ.P. 27 to obtain the names of the inmates that were listed as in-custody detainees within H-Pod.

# STATE OF ALABAMA

### Department of Corrections
### Inmate Stationery

standard(#4), and that the States legitimate goals could not be achieved by a less restrictive, alternative means on that exact date.

#4 91, 72 L.Ed. 2d. 694 102 S.Ct. .., Turner v. Safley 482 US. 178 96 L.Ed. 2d. ,64.

Narrative 3

Plaintiff contends that the grievance procedure issues are distinctly definable at this juncture of the dispute. During my incarceration within the Houston County Jail in 2007 there were several instances where I was intentionally and arbitrarly subjected to discrimatory practices by improper execution of standing policies and procedures. The underlying factual occurance is based upon what I preceive as violations of my constitutional protected liberties and priviledges and were rights that were supposed to have been regulated by the Defendant supervisory officials ... Sergeant Cindy Bichmann, Sergeant Carl Kirksey and Commander Keith Reed.

On the date of October 14, 2007 after I had been returned the response to the appeal to the charging sanction, I had immediately submitted the first inmate grievance to the administrative officials concerning the underlying incident... while still confined in "administrative 'lockdown status". Intially, I had extreme difficulty being issued a inmate grievance form which I had requested from several of the shift-duty correctional officers. Inmates in administrative lockdown are not allowed any writing materials within the cells during lockdown status, so the only way I had obtained the "first grievance" was during the time I was rolled out for my hour to shower and exercise. I

## STATE OF ALABAMA

### Department of Corrections
#### Inmate Stationery

then proceded to submitt the grievance to the officers on duty shift, but instead of the officers following procedures to sign the copy within my presence .., I was told to put it "in the door" of the B-Pod entranceway and then return to my cell.

Since it is at the officers discretion to issue grievance forms during their assigned shift duty there are points to be shown concerning the Defendants' prior knowledge or intent. This will bring to light that the prejudical mode of intent was to intentionally conceal documentation of this grievance.

Previously, anytime an inmate grievance was filed the officers were required to return the carbon copy portion to the inmate then file the front drafted section of the grievance so that it would be placed in the inmate's personal file.

I admit to the Court that material proof of this grievance solicitation is excluded from the record because I never received a response back but my contentions can clearly show cause why the Defendants' emphasized that "I filed no other grievances". (other than the one on record). I would like to contend that this purposal by the Defendants' apparently acted as proffered justification for their actions when it actually, was a pretext for retaliation against me. The Court has to throughly consider that the entire circumstances of the incident is very much in dispute .., particularly the issue about what direction the "first grievance" action actually took because I obviously followed the necessary guidelines for an appeal of the grievance procedure when I took steps to have a Grievance Sanction Appeal Form" sent to me*. This primarily was the only available option and inmate procedure that I was

---

* Exhibit #2 filed on October 13, 2007.

# STATE OF ALABAMA
### Department of Corrections
#### *Inmate Stationery*

aware of that would personally direct this issue to Comm. Keith Reed. However, I neither received access to this form nor had the first grievance ever been responded to. This process can be shown as being in a span of over 13 days ... which is when I submitted the subsequent 2nd grievance to Sheriff Andy Hughes on the date of October 26, 2007.

A reasonable assessment by the Court of these issues is enough to present a geninue issue of fact that the actual manipulation of the grievance process and the imposing of the rule violations was directly contemplated by the named Defendant officials strictly for the purpose of punishing and intimidating me rather than to secure order to the jail itself for the two rule violations stated. It is shown that the Defendants knowledge and awareness of their practices in the manipulation of the secured rights that I have under due process were clearly led by the named senior supervisory officials along with their correction officers and these actions were highly contrary to clearly established law.

I specifically ground this averment on a showing that the Houston County Sheriff's Dept. jail administration would not give a requested decision in writing so that I, (the Plaintiff) would have accessible recorded documentation to show that I had previously exhausted all jail administrative remedies through proper inmate procedures.

"As a matter of law and according to established precedent regulations which pertain to constitutional due process of law ... "A due process violation is not complete when the deprivation occurs, but is only complete when the State fails to provide due process." Zimmerman v. Burch 494 US. 113, 126, 110 S.Ct. 108, L.Ed 2d. 100 (1990).

# STATE OF ALABAMA

### Department of Corrections
*Inmate Stationery*

As the Plaintiff, I respectfully submitt to the Court that I have randomly specified the correct controlling authorities within my Responsive Motion in Opposition and Affidavit and I have clearly distinguished the factual events and circumstances that will correctly support the said constitutional violations and relevant claims.

Note of importance to the District Court Magistrate:

- There is an exclusion of relevant evidence from my informal report which is the primary focal point of this complaint. This is the original grievance filed on October 26, 2007. I am inform the Court that I have in my possession a copied version which is an exact replica of the original. The Defendants' did not send the portions of my grievance that specifically stated the basis for the existing complaint. IS the Court so orders, I will provide this document upon it be ordered so to acertain the circumstances that may serve each party partie's intrest.

**STATE OF ALABAMA**
Department of Corrections
*Inmate Stationery*

x *William Rollins*

    Before me, the undersigned authority, personally appeared the Plaintiff, William Aaron Rollins, who being sworn by me according to law deposes and states that the matters and things alleged in the above Affidavit are true and correct to the best of his information, knowledge and belief.

    Sworn to and subscribed before me on this the 20th day of June, 2008.

*Carolyn R. Abercrombie*
My Commission Expires 06/06/2011

5